IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLOYCEVANN SALAZAR,

      Petitioner,

v.                                               No. 22-CV-734 DHU/JFR

SOUTHERN NEW MEXICO CORRECTIONAL
FACILITY and RAUL TORREZ, ATORNEY
GENERAL OF THE STATE OF NEW MEXICO,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1] REGARDING PETITIONER'S § 2241 PETITION FOR A WRIT OF HABEAS CORPUS

**THIS MATTER** comes before the Court on Petitioner Cloycevann Salazar's *Petition Under 28 U.S.C. § 2241 For A Writ Of Habeas Corpus*.[2]  Doc. 1.  Respondents filed an initial response that addressed the Petition's unexhausted grounds for relief and the need for Petitioner to elect how he wished to proceed.  Doc. 9.  The Court issued an Order to Show Cause, Doc. 10, which Petitioner answered.  Docs. 13; 16; 17.  Respondents then filed their merits response.  Doc. 18.  Petitioner has not filed a reply.  Having carefully reviewed the record,[3] the parties'

---

[1] The presiding judge referred this matter to the undersigned by Order of Reference "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case."  *See* Doc. 7.

[2] The Court has previously determined that it will analyze the instant petition under § 2254.  Doc. 5 at 1.  § 2241 is the vehicle wherein prisoners may challenge the execution of their sentence, as opposed to the validity of their conviction and sentence.  *See McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811-12 (10th Cir. 1997) (noting that petitions under § 2241 are used to attack the execution of a sentence, in contrast to § 2254 habeas and § 2255 proceedings, which are used to collaterally attack the validity of a conviction and sentence) (citations omitted). Here, Petitioner challenges his probation revocation and sentence, but not the execution of his sentence.

[3] The record in the action consists of the Petition and Respondent's initial response.  *See* Docs 1; 9.  The Court notes that within the initial response, Doc. 9, Respondents include numerous attachments (i.e. Exhibits A-XX and DS1-DS6).  *See* Doc. 9-1 at 1-295.  The Court will cite to documents in the record by their respective ECF document and page number, as reflected in the Court's ECF docket.

submissions and the relevant law, and for the reasons set forth herein, the undersigned finds that

the Petition lacks merit and recommends that the District Judge deny it with prejudice.  I also

recommend against the issuance of a Certificate of Appealability.

## PROCEDURAL BACKGROUND

On December 21, 2010, Petitioner Cloycevann Salazar pleaded guilty in the Twelfth

Judicial District Court, Alamogordo, New Mexico, to a number of felony charges:  burglary;

aggravated burglary; armed robbery; aggravated battery; and breaking and entering.  Doc. 9-1 at

1-13.  District Court Judge Waylon Counts accepted Petitioner's guilty plea, and imposed

sentence of a term of incarceration of 24 years, with 19 years suspended and 5 years to be served

in the New Mexico Department of Corrections.  *Id.* at 29-34 (Second Amended Judgment).

Judge Counts imposed terms and conditions of a standard probation agreement[4], and a number of

special terms and conditions that, among others, required Petitioner to not possess or consume

drugs or alcohol, to submit to drug/alcohol screening, and to submit to random urinalysis at the

discretion of the probation officer.  *Id.*

Several years later, after having completed the five-years incarceration and while under

probation supervision, Petitioner was found to have consumed alcohol and so, in September

2015, the Deputy District Attorney filed a Petition for Probation Revocation, *id*. at 38-40 (First

Petition), thereby prompting the state court to issue a Notification of Arrest and a No Bond hold.

*Id.*  A Report of Violation (Probation) detailed the violative conduct and recommended that

Petitioner be incarcerated for ninety (90) days, with the probation officer to work on getting

---

[4] *See* Doc. 9-1 at 32; a "Standard Probation Agreement" was not made part of the record here, but the state court cited to "Standard Probation Condition #1" in its order denying Petitioner's motion to suppress.  Condition #1 reads: "State Laws: I will not violate any of the laws or ordinances of the State of New Mexico, or any other jurisdiction.  I shall not endanger the person or property of another."  *See id*. at 206 (Order Denying Motion to Suppress).

Petitioner into a year-long recovery program. *Id*. at 41-43. Petitioner was released pending resolution of these probation revocation proceedings. *See id.* at 281 (Docket Sheets, Order of Release, filed December 22, 2015).

With the First Petition pending and Petitioner on release, the Deputy District Attorney filed a Petition for Second Probation Revocation alleging that Petitioner further violated the terms of his probation by committing additional crimes. *See* Doc. 9-1 at 47-49 (Second Petition, filed March 31, 2016). This Second Petition stemmed from an incident of domestic violence that allegedly occurred within the boundaries of the Mescalero Apache Reservation. *Id.* at 58 *et seq.* (Motion to Suppress). Ultimately, in July 2016, after the state judge denied Petitioner's motion to suppress, *see id.* at 78, Petitioner signed a "Conditional Plea and Disposition Agreement for Petition for Probation Revocation", pleading no contest to the allegations in the First Petition and conditionally to those in the Second Petition. *Id.* at 72-75. Judge Counts accepted the change of plea, and after hearing from witnesses, from Petitioner, and from counsel, remanded Petitioner to the Department of Corrections to serve the balance of the original sentence—i.e. 19 years less credit for time served. *Id.* at 81; *see also id.* at 82-83 (Order Revoking Probation).

Petitioner appealed the state judge's decision denying his motion to suppress, as well as the sentence imposed, to the New Mexico Court of Appeals. Doc. 9-1 at 84. This initial appeal focused on the fact that the incident that resulted in domestic violence charges (and which formed the basis of the Second Petition) occurred on tribal lands, and because Petitioner was an "Indian", the State lacked jurisdiction to prosecute these charges. *See id.* at 102-03 (Docketing Statement). The Court of Appeals initially proposed summary affirmance, but after Petitioner filed a memorandum in opposition, the matter was assigned to the court's general calendar. *Id.* at 132. The Court of Appeals reversed and remanded, directing the district judge to reconsider

his ruling that Petitioner is not an Indian, and to explain the legal and factual bases for its ruling on remand.[5]  *Id.* at 198.

The state district judge subsequently held an evidentiary hearing and found that Petitioner is an Indian, that the domestic violence incident occurred on Tribal lands, and that the State of New Mexico therefore lacked jurisdiction to prosecute Petitioner for the domestic violence charges.  Doc. 19-1 at 205-06.  Nonetheless, the state judge found that the Petitioner's violent conduct still properly formed the basis of a probation violation.  *Id*.  The judge concluded that "even if the Court was wrong as to the State's jurisdiction over the 'second' probation violation, then the Order Revoking Probation, filed on August 15, 2016, would still stand as the defendant entered a no contest plea on April 29, 2016, to the 'first' Petition for Probation Revocation, filed on September 18, 2015."  *Id.* at 206.  The state district judge thus upheld the 19-year probation violation sentence previously imposed.  *Id.*

Petitioner again appealed, this time arguing that the state judge exceeded the scope of the mandate issued by the Court of Appeals after the first appeal.  *See* Doc. 19-1 at 210 *et seq.* (Docketing Statement).  In addressing this challenge, the appellate court noted that the state judge at sentencing revoked Petitioner's probation based on both the first and second petitions, but the grounds set forth in the first petition—consumption of alcohol—supplied an adequate basis to revoke probation.  "As we explained in the notice of proposed summary disposition, Defendant's violations of the special conditions, as set forth in the first petition, supplied

---

[5] The Court of Appeals concluded in this first appeal:

"We have therefore limited our analysis to the narrow theory the State has chosen to pursue: that Defendant violated the condition of his probation that requires him to comply with the laws of New Mexico, and that he did so by being charged with two new crimes in state court.  Because in this instance that theory is only valid if Defendant is not an Indian, and the district court relied on the wrong test to determine whether he is, we must reverse."

Doc. 19-1 at 198

adequate independent grounds for the revocation of Defendant's probation." *Id.* at 251-52

(internal reference and citation omitted).  The appellate court concluded that it was unnecessary

to further consider the argument that the allegations contained in the second probation violation

(re domestic violence) formed the basis of the district judge's sentencing decision. *Id.* at 252.

The Court of Appeals summarily denied the second appeal, noting that the district judge on

remand "complied in all respects", by "explain[ing] the legal and factual bases for its ruling…"

as required by its remand. *Id.* at 250.

Petitioner sought certiorari in the New Mexico Supreme Court, which denied certiorari

on September 27, 2021.  Doc. 19-1 at 273-74.  Thereafter, Petitioner timely filed the instant

federal petition on October 4, 2022.  Doc. 1.  Petitioner now presents two[6] claims for this Court's

consideration:

> GROUND ONE:  The District Court exceeded the Scope of the Court of Appeals'
> mandate on remand; the evidence on the alleged second probation violation should have
> been suppressed for lack of jurisdiction;

> GROUND TWO: The district court's ruling that it could revoke Petitioner's probation
> and sentence him to 19 years' incarceration based on his first technical violation for
> consuming alcohol violated his due process rights, exceeded the scope of the remand and
> resulted in an arbitrary sentencing disparity.

The Court addresses these claims below.

## **LEGAL STANDARDS**

The statutes governing federal habeas corpus actions for state and federal prisoners were

substantially amended by the enactment of the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), effective April 24, 1996.  Pub. L. No. 104–132, 110 Stat. 1214.  Petitioner is a

New Mexico prisoner seeking federal habeas relief, so his habeas petition is governed by the

---

[6] Petitioner initially included a third claim that was grounded in ineffective assistance of counsel, but subsequent to
the Court's Order to Show Cause, *see* Doc. 10, Petitioner elected to dismiss the IAC claim and proceed only on
Grounds One and Two.  Doc. 17.

AEDPA's amendments.  *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997) (the AEDPA's amendments apply to habeas petitions filed after the AEDPA's effective date of April 24, 1996); *see also* Doc. 9 at 6 (conceding that Petitioner satisfied the "in custody" requirement of the AEDPA).  The AEDPA sets a strict time limit to file for federal habeas relief, *see* 28 U.S.C. § 2241(d)(1), which Respondents concede has been met in this case.  *See* Doc. 9 at 12-13 (noting that Petitioner signed and deposited the pending petition before the AEDPA's one-year deadline).

Under the AEDPA, federal habeas corpus relief is proper only when the state court's adjudication of a federal claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In ascertaining whether the law is clearly established, the Court reviews Supreme Court holdings extant when the state court conviction became final.  *House v. Hatch,* 527 F.3d 1010, 1015 (10th Cir. 2008) (quoting *Williams v. Taylor (Terry Williams),* 529 U.S. 362, 380 (2000)).  Additionally, the Court is to presume that the factual findings of the state court are correct, and Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  *House*, 527 F.3d at 1019; 28 U.S.C. § 2254(e)(1).

In this case, Petitioner argues that the state district judge exceeded the scope of the Court of Appeals' mandate for remand, and erred by not suppressing evidence that supported the Second Petition to Revoke.  Thus, Petitioner's first claim appears to rest on his substantive and procedural due process rights, in that the state district court failed to follow the directives of the appellate court and erroneously denied Petitioner's motion to suppress.  Petitioner's second

claim also argues a due process violation in that, again, the district court allegedly exceeded the

scope of the mandate and arbitrarily sentenced him, thereby creating a sentencing disparity.

Unfortunately, Petitioner fails to set forth any clearly established law, or demonstrate how the

state court's decision violated such law or relies on an unreasonable determination of the facts in

light of the evidence presented.

Under clearly established federal law, "[t]he Due Process Clause of the Fourteenth

Amendment imposes procedural and substantive limits on the revocation of the conditional

liberty created by probation." *Black v. Romano*, 471 U.S. 606, 610 (1985) (citing *Bearden v.*

*Georgia*, 461 U.S. 660, 666, and n.7 (1983)); *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82 (1973).

But a revocation hearing "does not require the full panoply of procedural safeguards associated

with a criminal trial." *Romano*, 471 U.S. at 613. The minimum requirements of due process at a

final revocation hearing include:

> (a) written notice of the claimed violations of (probation or) parole; (b) disclosure
> to the (probationer or) parolee of evidence against him; (c) opportunity to be
> heard in person and to present witnesses and documentary evidence; (d) the right
> to confront and cross-examine adverse witnesses (unless the hearing officer
> specifically finds good cause for not allowing confrontation); (e) a 'neutral and
> detached' hearing body such as a traditional parole board, members of which need
> not be judicial officers or lawyers; and (f) a written statement by the factfinders as
> to the evidence relied on and reasons for revoking (probation or) parole.

*Scarpelli*, 411 U.S. at 786. "The decision to revoke probation is generally predictive and

subjective in nature" and the "flexible, informal nature of the revocation hearing ... does not

require the full panoply of procedural safeguards associated with a criminal trial." *Black,* 471

U.S. at 613 (citing *Gagnon,* 411 U.S. at 787-90 and *Morrissey v. Brewer,* 408 U.S. 471, 489-90

(1972)). Accordingly, the Supreme Court has held that traditional rules of evidence generally do

not apply in parole and revocation proceedings. *Morrissey,* 408 U.S. at 489 ("[T]he process

7

should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial").

Finally, it is clearly established that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976).

Therefore, cognizant of these well-established standards, the Court addresses Petitioner's claims.

## **ANALYSIS**

After reviewing the motion and response, as well as the underlying files and records of the case, the Court understands it may hold an evidentiary hearing.  28 U.S.C. § 2254(d); *Townshend v. Sam*, 372 U.S. 293, 312 (1963).  To warrant such a hearing, the Petitioner must show that the hearing held in state court was not fair or adequate.  Rules Governing Section 2254 Cases, Rule 8 Adv. Comm. Notes; § 2254(d).  When reviewing the record in this case, including the Petition, the Response, as well as all the documents in the underlying criminal case, the Court is mindful that it must liberally construe a pro se litigant's pleadings and hold them to a less stringent standard than pleadings drafted by an attorney.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).  The Court has done so here and has determined that no such evidentiary hearing is warranted, as the petition, files and records in this matter conclusively show that Petitioner received a fair and adequate hearing.  The Court is comfortable ruling without taking additional testimony or evidence.

1. Whether the District Court exceeded the scope of the Court of Appeals' mandate on remand

In Ground One, Petitioner claims that the state district judge exceeded the scope of the Court of Appeals' mandate by making rulings beyond that Petitioner was an Indian for jurisdictional purposes. As the Court of Appeals noted in Petitioner's second appeal, its remand was "for the purpose of allowing the district court to engage in a fact-specific multi-factor analysis" regarding Petitioner's Indian status. Doc. 9-1 at 250. Petitioner argues that findings beyond that of Indian status were outside the scope of the remand. As Petitioner frames the issue, "the district court improperly expanded the scope and concluded the State still had jurisdiction to prosecute him although the State lacks jurisdiction over Indians on Indian land. The determination that the defendant was an Indian warrants the suppression of evidence for lack of jurisdiction." Doc. 1 at 4.

Petitioner raised this argument in his second appeal to the New Mexico Court of Appeals. *See* Doc. 9-1 at 213 (Docketing Statement); at 229-33; 242. There, Petitioner highlighted the language used by the Court of Appeals in describing the remand, pointing out the "narrow scope of the district court's task on remand." *Id.* at 231. Petitioner argued that the Court of Appeals "specifically held that the State's theory for a probation violation based on New Mexico law is *only* valid if Mr. Salazar was determined not to be an Indian." *Id.* at 232 (citation omitted) (italics in original). Thus, by revoking probation and imposing sentence after finding that Petitioner is an Indian, the district court committed error, as the only basis for revocation was removed by its finding of Indian status. *Id.* at 242.

Here, Petitioner was afforded all the procedural and substantive due process rights to which he was entitled. On July 26, 2016, the state district judge conducted a hearing on the Petitioner's motion to suppress, wherein Petitioner was represented by counsel. *See* Doc. 9-1 at 76 et seq. After the state judge denied this motion, Petitioner then pleaded no contest to the

allegations set forth in the First Petition to Revoke Probation. *Id.* Petitioner entered into a written agreement and affirmed on the record that he understood the charges and possible sentence, the rights he is giving up by pleading no contest, and that by pleading no contest the court will find that he violated his probation. *Id.* at 78-79. Petitioner through counsel next informed the state judge that he was prepared to proceed to sentencing, at which time the state presented numerous witnesses, including witnesses whose testimony related to the allegations of the Second Petition. The Petitioner was also allowed to speak and addressed the state judge. *Id.* at 80. At the conclusion of the sentencing hearing, which lasted approximately one hour, the state district judge revoked Petitioner's probation and imposed the balance of his sentence to be served in the Department of Corrections. *Id.* at 81.

Subsequently, on remand from the Court of Appeals, the state district court conducted further proceedings, particularly regarding the jurisdictional question posed by the Second Petition and Petitioner's Indian status, and found (1) that "other jurisdictional entities" had jurisdiction over the criminal offenses of the Second Petition; (2) that the State of New Mexico still had jurisdiction to pursue a probation violation based on the Second Petition, given that a standard condition of probation was to not violate the laws of New Mexico "or any other jurisdiction"; and (3) that even if the court was incorrect as to its jurisdiction over the Second Petition, the Order Revoking Probation would stand as Petitioner entered a no contest plea to the First Petition. *See* Doc. 9-1 at 205-06.

Petitioner's interpretation of the Court of Appeals' remand is overly restrictive. The Court of Appeals (in Petitioner's second appeal) observed that the district court had relied upon *both* the First and Second Petitions to revoke his probation. *Id.* at 251 ("Ultimately, the order revoking Defendant's probation was based on both petitions."). As noted above, the First

Petition was based on Petitioner's violation of his special conditions regarding consumption of alcohol, to which Petitioner entered an unconditional no contest plea. *Id.* The Court of Appeals found that this violation "supplied adequate independent grounds for the revocation of [Petitioner's] probation. *Id.* at 252 (citation omitted). Thus, the violations that were set forth in the Second Petition became irrelevant: "[i]t is therefore unnecessary to further consider Defendant's arguments relative to the additional probation violations that were the subject of the second petition to revoke." *Id.*

Accordingly, there is no basis to Petitioner's argument that the state district judge somehow "exceeded" the mandate of the Court of Appeals; importantly, the mandate from the Court of Appeals to the district court clerk simply states that "the cause is remanded to you for any further proceedings consistent with said decision/order." Doc. 9-1 at 200. The state judge conducted the required multi-factor test and made the necessary findings regarding Petitioner's Indian status, and then acted within his authority to revoke probation and proceed to sentencing based on the allegations of the First Petition. *See id*. at 206 ("even if the Court was wrong as to the State's jurisdiction over the 'second' probation violation, then the Order Revoking Probation… would still stand as the defendant entered a no contest plea… to the 'first' Petition for Probation Revocation…"). As noted by the Court of Appeals in its subsequent review, "[t]he district court complied [with the remand] in all respects." *Id.* at 250.

At a more basic level, though, Petitioner fails to identify any clearly established federal law to support his exceed-the-mandate argument. It is Petitioner's burden to point to clear authority that demonstrates that the state court applied reasoning or reached a result that contradicts governing Supreme Court precedent, or reached a result different from a Supreme Court case with materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 403 (2000)

("for Williams to obtain federal habeas relief, he must first demonstrate that his case satisfies the condition set by § 2254(d)(1)."). "The absence of clearly established federal law is dispositive under § 2254(d)(1)." *House*, 527 F.3d at 1018 (citing and discussing *Carey v. Musladin,* 549 U.S. 70 (2006)).

Here, Petitioner appears to argue that the Court of Appeals' mandate on remand required the state court to do one thing and one thing only: to determine Petitioner's Indian status, full stop. Assuming the district court found Petitioner qualified as an Indian, then under Petitioner's logic, the Second Petition would necessarily be dismissed in its entirety. Yet, as noted above, Petitioner overlooks the fact that he had unconditionally pleaded no contest to the First Petition, and the violations of the First Petition supplied an independent basis for revocation and the sentence imposed. Doc. 9-1 at 252. Petitioner received timely, written notice of the violations, he was given the opportunity to be heard, present witnesses and argue his case, was represented by counsel who cross-examined State's witnesses and argued for leniency, and his hearing was adjudicated by a neutral judicial officer. There is no question that Petitioner was afforded the minimum requirements of due process. *See Scarpelli*, 411 U.S. at 786. Finally, even with dismissal of the Second Petition, the state district judge was within his authority to revoke Petitioner's probation and impose the balance of the original 24 years sentence. Having supplied no authority in law or fact to support the claim that the state judge's finding of Indian status somehow deprived the court from proceeding to revocation and sentencing, Petitioner's due process argument fails.

2. <u>Whether the evidence of the alleged second probation violation should have been suppressed for lack of jurisdiction</u>

Also in Ground One, Petitioner argues that the Second Petition should have been dismissed given that the state court lacked jurisdiction to consider it, and that the state judge

should have suppressed evidence regarding the charges set forth in the Second Petition.
Petitioner fully litigated his jurisdictional-defect suppression argument by raising it first before
the district court in probation revocation proceedings, *see* Doc. 9-1 at 58-63, and then again on
appeal. *Id.* at 136-57.  On remand from his first appeal, Petitioner renewed his suppression
motion to the district judge, who found that Petitioner is an "Indian" and the new felony
domestic violence charges occurred on tribal land, but denied suppression as "the State had
jurisdiction to pursue a probation violation based on the defendant's violent behavior/crimes on
tribal land…".  *Id.* at 205-06.

Petitioner's claim in federal habeas fails because clearly established federal authority
prohibits Petitioner from challenging in federal habeas the denial of a state court suppression
motion.  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth
Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground
that evidence obtained in an unconstitutional search or seizure was introduced at his trial."
*Stone*, 428 U.S. at 495.[7]  Petitioner identifies no procedural deficiency, either at the trial court or
before an appellate court, and in fact fully presented his arguments in both courts.  Rather, his
challenge points to the decisions of the state district judge and appellate court in light of the
evidence and arguments he presented at the suppression hearing; i.e. that he was an Indian whose

---

[7] The Court notes that *Stone v. Powell* concerned a challenge raised in federal habeas to the admission of evidence
that was introduced *at trial*, whereas the evidence here was introduced during Petitioner's *probation revocation
proceedings*.  428 U.S. at 495.  Respondent cites to a single district court opinion that extends *Stone* to probation
revocation proceedings.  Doc. 18 at 8-9 (citing *Green v. Jones*, 2014 WL 4700001 (W.D. Ok. Sept. 19, 2014).  The
undersigned has not located controlling precedent on the issue, but is aware of other opinions that similarly extend
*Stone*'s holding to probation revocation proceedings.  *See Grimsley v. Dodson*, 696 F.2d 303 (4th Cir. 1982); *United
States v. Bazzano*, 712 F.2d 826 (3rd Cir. 1983); *United States v. Winsett*, 518 F.2d 51 (9th Cir. 1975).  The
undersigned is persuaded that the central holding of *Stone*—that a federal habeas petitioner may not obtain habeas
relief on the ground that evidence used against him was obtained in an unconstitutional search or seizure, as long as
the petitioner was afforded the opportunity for full and fair litigation of a Fourth Amendment claim, *see* 428 U.S. at
494—applies when such allegedly tainted evidence was introduced in probation revocation proceedings.

alleged misconduct occurred on Indian land, thereby depriving the state of jurisdiction and

precluding the district judge from considering the evidence in probation revocation proceedings.

Because Petitioner's case lacks any hint of a procedural deficiency, *Stone v. Powell* precludes

this Court from further considering Petitioner's jurisdictional, Fourth Amendment based claim.[8]

> 3. <u>Whether the district court's ruling that it could revoke Petitioner's probation and
> sentence him to the balance of his suspended sentence—19 years—based on the
> allegations in the First Petition to Revoke Probation, violated Petitioner's due process
> rights, exceeded the scope of the remand, and resulted in an arbitrary sentencing
> disparity</u>

In Ground Two, Petitioner claims that the state district judge exceeded the scope of

remand by revoking his probation under an "unanticipated and novel alternative justification",

that it could revoke probation "based solely on the first technical violation of possessing alcohol

and sentence him to the remainder of his 24-year suspended sentence on that violation standing

alone." Doc. 1 at 47. Petitioner argues that graduated sanctions are imposed for technical

violations, in lieu of revocation.[9] Doc. 1 at 48; *see also* Doc. 9-1 at 237-42 (Memorandum in

Opposition). Here, Petitioner entered a no contest plea to what might constitute a technical

violation—consuming alcohol—and the probation officer had recommended 90 days'

incarceration. *Id.* at 237. According to Petitioner, the district court's decision to reject this

recommendation and sentence Petitioner to the balance of his original suspended sentence not

---

[8] Petitioner raised the additional argument in his suppression motion that the state law enforcement officer was without authority to investigate criminal matters that occurred on tribal lands. Doc. 1 at 4. However, Petitioner failed to raise this matter in the Court of Appeals. *See* Doc. 9-1 at 189 ("The district court ruled against [Petitioner], and he reserved the right to appeal that ruling in his plea agreement, but he does not challenge that ruling on appeal."). Accordingly, because Petitioner effectively abandoned this argument at the state appellate level, he has failed to exhaust it for federal habeas review. *See e.g. Simpson v. Carpenter*, 912 F.3d 542, 571 (10th Cir. 2018) ("[A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule.") (citing *Martinez v. Ryan*, 566 U.S. 1, 9 (2012)).

[9] In a technical violation program, a technical violation is any violation that does not involve new criminal charges. Doc. 9-1 at 239, citing *State v. Aslin*, 2020-NMSC-004.

only exceeded the scope of the Court of Appeals' remand, Doc. 1 at 5, but also violated the

federal constitutional prohibition against cruel and unusual punishment.  Doc. 9-1 at 242.

      This argument fails for a number of reasons.  First, the Court of Appeals expressly

declined to rule on whether the district judge erred at sentencing by imposing the balance of the

suspended sentence.  Doc. 9-1 at 252-53.  Second, the Twelfth Judicial District did not have a

"technical violation program", so the state district judge "was therefore at liberty to select any

appropriate sanction, including revoking Defendant's probation and requiring him to serve the

balance of his original sentence." *Id.* at 253.  Third, no sentencing disparity or arbitrariness

occurred given that each judicial district had authority to adopt its own sentencing approach. *Id.*

Fourth, the appellate court concluded that the "imposition of a 19-year sentence" was not

disproportionate to the severity of the probation violation, as the sentence does not reflect a

sanction for the probation violation, but rather constitutes punishment for the underlying

offenses. *Id.* (citation omitted).  And finally, the sentence was not arbitrary or in violation of the

Eighth Amendment, as district courts have broad authority to revoke probation based upon proof

of any violation, allowing the appellate court to conclude that the state district judge acted within

the scope of his discretion. *Id*. at 254.  As aptly explained by the Court of Appeals, the district

judge did not exceed the scope of the remand. *Id.* at 250.

      Finally, and perhaps at a more basic level, Petitioner's argument fails given that he makes

no effort to demonstrate that the state courts' resolution of his claims was contrary to, or

involved an unreasonable application of, clearly established federal law, or was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceedings. *See* 28 U.S.C. § 2254(d).  Petitioner describes his sentence as "disproportionate"

and constituting "cruel and unusual punishment", but doesn't explain how it is either. *See* Doc. 1

at 5.  Liberally construing Petitioner's claim through the Petition's attachments, the undersigned understands Petitioner to be arguing that he suffered a violation of his Constitutional right to due process.  Here, Petitioner presented his arguments to the New Mexico Court of Appeals which soundly rejected them.  *See* Doc. 19-1 at 222-42 (Memorandum In Opposition).  The AEDPA requires a federal court to apply a deferential review, and nothing here suggests that the state courts erred or reached an incorrect determination.  The state court decisions are not contrary to clearly established federal law, *see Black,* 471 U.S. at 610; *Scarpelli*, 411 U.S. at 781-82, nor do they reflect an unreasonable determination of the facts.  Accordingly, the Court recommends that the District Judge deny Petitioner's second claim.

    4.  <u>The Court Recommends Against Issuing a Certificate of Appealability</u>

      Under Rule 11 of the Rules Governing Section 2254 Cases, the Court must issue or deny a Certificate of Appealability (COA) whenever it enters a final order adverse to the § 2254 petitioner.  *See* Habeas Corpus Rule 11(a).  A COA may issue only upon "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating that to obtain a COA, a petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong").  The undersigned concludes that Petitioner has not made such a showing and therefore recommends against the issuance of a COA.

**CONCLUSION AND RECOMMENDATION**

      A review of the record in this case does not show that the adjudication of Petitioner's case resulted in a "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or resulted in a decision that was based on an "unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  In reviewing

Petitioner's case and imposing sentence on remand, the state courts reasonably applied clearly

established law to the evidence in Petitioner's case, and this Court on federal habeas review is

not in a position to find otherwise.  Accordingly, the undersigned concludes that, under the

deferential standard set forth in the AEDPA, the petition for a writ of habeas corpus should be

denied.

      For all of the foregoing reasons, the undersigned finds that Petitioner Cloycevann

Salazar's *Petition Under 28 U.S.C. § 2241 For A Writ of Habeas Corpus* is not well-taken and

recommends that it be **DENIED** and **DISMISSED WITH PREJUDICE.**  I further

recommend that a certificate of appealability (COA) be **DENIED**.


                                               _____
                                               JOHN F. ROBBENHAAR
                                         United States Magistrate Judge


---

      **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---